# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| CAMERON ALLEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )      No. 2:16-cv-2997-STA-egb |
| | ) |
| SHELBY COUNTY, et. al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER PARTIALLY DISMISSING CLAIMS AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANT HOPSON

On December 21, 2016, Plaintiff Cameron Allen ("Allen"), a pre-trial detainee at the Shelby County Criminal Justice Complex in Memphis, Tennessee, filed *pro se* a Complaint pursuant to 42 U.S.C. § 1983.[1] The Court granted Allen leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) The Clerk will record the Defendants[2] as Shelby County,[3] Chief First Name Unknown ("FNU") Hammons, Correctional Officer FNU Buford, Officer FNU Hopson, Lieutenant ("Lt.") Davis, Captain ("Capt.") FNU Jackson, Sergeant ("Sgt.") FNU Buntyn, Sgt. FNU Harris, Sheriff Bill Oldham, Sgt. FNU Smith, and Sgt. FNU Brian.

## BACKGROUND

---

[1] Allen filed a notice of change of address on July 20, 2018. The Clerk of Court has updated Allen's mailing address.

[2] Allen has filed three supplements to his initial Complaint (ECF Nos. 6, 11, & 12).

[3] The Court construes claims against the Shelby County Sheriff's Department and the Jail as claims against Shelby County itself.

On July 26, 2016, Allen was indicted for carjacking, employing a firearm with intent to cause harm, and unlawful possession of a firearm by a convicted felon. https://cjs.shelbycountytn.gov (Case No. 16 004471-16628663). On May 11, 2018, Allen pleaded guilty to carjacking and unlawful possession of a firearm by a convicted felon. Allen is concurrently serving an eight-year sentence and a three-year sentence. *Id*.

Allen's Complaint and supplements contain allegations concerning a number of separate incidents during his pre-trial detention at the jail. According to Allen, on January 18, 2016, Allen was walking to his cell when Officer Hopson sprayed him with a mace pepper spray without justification. (Second Amend. Compl. at 6, ECF No. 11.) Allen received medical treatment to flush the chemical from his eyes but experienced blurred vision and a great deal of discomfort. (*Id.*) According to Allen, the incident was captured on video. (*Id.*) Sgt. Harris, who was at that time Officer Hopson's supervisor, was notified immediately; however, Sgt. Harris did not take any action other than to send Allen back to his cell. (*Id.*) Allen filed two grievances and addressed a letter to the grievance coordinator. (*Id.*) Sgt. Harris responded to Allen's grievance. (*Id.* at 6.) According to Sgt. Harris's response, Officer Hobson reported that he sprayed Allen because Allen refused a verbal order to go on lockdown, a claim Allen denies. (*Id.* at 6–7.) Sgt. Harris's response also stated that he informed Officer Hobson he should contact his supervisor before using a chemical spray. (*Id.* at 7.)

Next, on August 30, 2016, Allen claims that he discovered the hallway mailbox full and that the mailbox had been full for over a week. (*Id.* at 5.) Allen spoke with Sgt. Buntyn about the mail. (*Id.*) Sgt. Buntyn responded that she did not care about the mail and advised Allen to file a grievance. (*Id.*) Allen filed a grievance in the matter, and Sgt. Buntyn falsely responded

that mail was taken to the mailroom daily.  (*Id.*)  After Allen appealed, his mail was held for one to two weeks before being sent to the mailroom.  (*Id.*)

Allen next contends that between November 22, 2016, and December 12, 2016, Sgt. Brian created a number of poor living conditions for inmates.  (*Id.* at 4-5.)  Specifically, Allen alleges that he was denied his hour of daily recreation, the right to live in a clean environment, and the right to file grievances.  (*Id.*)  According to Allen, jail officers only provided two grievance forms for each pod, that is, for thirty-five inmates.  (*Id.*)  Allen contends that Sgt. Brian was the person, or one of the people, responsible for these conditions.  (*Id.*)

On December 7, 2016, Allen alleges Officer Bufford sexually harassed him by winking at Allen, smiling and making obscene gestures, and telling Allen that "[he] was his bitch."  (*Id.* at 7.)  While Allen was using the toilet in his cell, Officer Bufford forced Allen's cell door open, made more sexual gestures, and remarked that Allen looked good naked.  (*Id.*)  Shortly after, Officer Bufford came back to Allen's door when Allen was standing in the doorway naked after getting off the toilet and told Allen that he was going to put an older inmate in Allen's cell.  (*Id.* at 8.)  Although Allen refused to have the cellmate, Office Bufford pushed him aside to allow the other inmate to enter.  (*Id.*)  Sgt. Brian failed to take any action on Allen's complaints about Officer Bufford's sexual harassment.  (*Id.*)  The same day Allen complained to Sgt. Brian, Officer Bufford again made sexual gestures to Allen and threatened to ejaculate on Allen's food and to rape him and the women in Allen's family.  (*Id.*)  Allen filed grievances over Officer Bufford's conduct, and Officer Bufford continued to make threats against Allen.  (*Id.*)  Allen even complained to Sgt. Brian that he was afraid for his life.  (*Id.*) Allen was eventually released from the administrative segregation unit where Officer Bufford worked.  (*Id.*)

On June 1, 2017, Allen returned to administrative segregation. (*Id.*) Allen discovered Officer Bufford was assigned to the first floor D-pod and notified Sgt. Smith of his previous issues with Officer Bufford. (*Id.*) Sgt. Smith disregarded Allen's concerns. (*Id.*) On June 4, 2017, Officer Bufford was distributing food and began again making rude comments about doing harmful things to Allen's food. (*Id.*) Allen filed another grievance against Buford, alleging that Bufford had a personal vendetta against him. (*Id.*) Lt. Jackson answered the grievance by stating that he spoke with Sgt. Smith and Officer Bufford, and Sgt. Smith stated that Allen was constantly asking for food, a claim which Allen denies. (*Id.*) Allen appealed. (*Id.* at 9.) Chief Hammons found no evidence that Officer Bufford was being unprofessional; however, she sent an order down through Lt. Davis and Sgt. Smith that Officer Bufford was not to feed Allen or handle Allen's food. (*Id.*) After Allen received Chief Hammons's decision, Officer Bufford threatened to poison Allen's food and kill him. (*Id.*) Although Allen was told that no "PREA" (Prison Rape Elimination Act) investigation would be conducted, Allen obtained copies of the PREA investigation with Officer Dixon's follow-up. (*Id.*) Allen believe that prison officials were trying to cover-up previous incidents between himself and Officer Bufford. (*Id.*)

Finally, Allen alleges that Sgt. Buntyn, Capt. Jackson, Lt. Davis, and Lt. Harris failed to adequately handle his grievances. (*Id.* at 10.) Allen seeks an injunction against each Defendant to protect his constitutional rights, the termination of any officer responsible for the violation of his rights, compensatory damages of $10,000 against each Defendant individually and $120,000 jointly, and punitive damages of $10,000 against each Defendant. (3d Amend. Compl. at 3, ECF No. 12.)

## SCREENING STANDARD

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the Court applies the Federal Rule of Civil Procedure 12(b)(6) pleadings standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the Complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Ultimately, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) nevertheless requires factual allegations to make a "showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Even so, *pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). And district courts are not required "to ferret out the strongest cause of action on behalf of pro se litigants." *Young Bok Song v. Gipson*, 423 F. App'x

506, 510 (6th Cir. 2011). In the final analysis, a court "cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011).

## ANALYSIS

Allen filed his Complaint on the official form for actions under 42 U.S.C. § 1983. Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). The Court now analyzes each of Allen's allegations in turn.

**I.  Claims Against Shelby County**

The Court first holds that Allen has failed to state a claim against Shelby County. When a § 1983 claim is made against a municipality or other local government, the Court must analyze two distinct issues: (1) whether a plaintiff's alleged harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Complaint fails to allege any facts to show why Shelby County is responsible for a purported violation of Allen's constitutional rights. A local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978). A plaintiff must show that there is a

direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id.* at 691-92. To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

In this case Allen has failed to allege the existence of any county policy or custom. Civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993). Still, in order "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). At the very least, a complaint must satisfy Rule 8(a)'s notice pleading requirements and give a municipality notice of the plaintiff's theory of liability. *Robertson v. Lucas*, 753 F.3d 606, 623 (6th Cir. 2014); *Balcar v. Jefferson Cnty. Dist. Ct.*, No. 17-5402, 2017 WL 4535934, at *2 (6th Cir. Sept. 8, 2017). Rather than identify an official policy or custom which caused his alleged injury, Allen apparently sues Shelby County because he was confined in a county institution, and Shelby County employed people who allegedly violated Allen's rights. These allegations fail to state a claim for municipal liability against Shelby County. Therefore, Allen's *pro se* Complaint is **DISMISSED** as to Shelby County.

## II. Claims Against Supervisory Officials

Allen next sues Sheriff Oldham and Chief Hammons simply because of their supervisory roles. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*,

556 U.S. at 676. Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008). Here Allen cannot sue Sheriff Oldham and Chief Hammons merely because they employed or supervised individuals who allegedly injured Allen. Therefore, Allen's Complaint against Sheriff Oldham and Chief Moore is **DISMISSED.**

### III. Failure to Investigate

Allen also contends that Sgt. Buntyn, Capt. Jackson, Lt. Davis, and Lt. Harris failed to investigate or take remedial measures in response to Allen's grievances, to the extent they were aware of his grievances and complaints. A failure to take corrective action in response to an inmate grievance or complaint does not constitute personal involvement for purposes of establishing § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). "Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id.* Sgt. Buntyn, Capt. Jackson, Lt. Davis, and Lt. Harris cannot be sued merely because they failed to take action in response to Allen's comments and grievances.

In addition to claims concerning the grievance process itself, Allen alleges that Sgt. Buntyn, Officer Hobson, Office Bufford, and Sgt. Smith made false statements in their disciplinary reports. There ordinarily is no cause of action against a witness who testifies falsely at trial. In *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983), the Supreme Court held that police officers are absolutely immune from suits for money damages for alleged perjury during criminal

trials. In so holding, the Supreme Court stated that private parties who testify in court traditionally have been immune from damages under § 1983. *See id.* at 330–34. Although a prison disciplinary proceeding is not precisely equivalent to a criminal trial, several courts have applied *Briscoe* to bar suits against prison employees who testify falsely at disciplinary hearings. *See, e.g.*, *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (report and recommendation adopted by district court); *McCullon v. Brouse*, Civ. No. 3:10-CV-1541, 2011 WL 1398481, at *8 (M.D. Pa. Mar. 24, 2011) (report and recommendation), *adopted*, 2011 WL 1419650 (M.D. Pa. Apr. 13, 2011); *Crumbley v. Dawson*, No. 9:09cv14, 2010 WL 2209189, at *5 (E.D. Tex. May 28, 2010); *Gibson v. Roush*, 587 F. Supp. 504, 506 (W.D. Mich. 1984).[4] Other courts have held that, where a prisoner has received the process that is due, he has no due process claim arising from even false testimony at a disciplinary hearing. *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process. Rather, such action violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights . . . ." (citations omitted)). Therefore, insofar as the Complaint can be read to allege a claim for making false statements in the course of the grievance process, those claims must be **DISMISSED**.

---

[4] In *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the Supreme Court held that disciplinary committee members were entitled to qualified, rather than absolute, immunity. That decision stressed that hearing officers are not independent and are not akin to professional hearing officers. They are, instead, prison officials and fellow employees of the individuals lodging charges against the inmate. *Id.* at 203–04. That decision did not address the immunity of witnesses at disciplinary hearings.

## IV. Excessive Force Claims Against Officer Hopson

Allen alleges that he was sprayed by Officer Hopson without cause. The Supreme Court held, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), that excessive force claims brought by pre-trial detainees must be analyzed under the Fourteenth Amendment's standard of objective reasonableness, rejecting a subjective standard that takes into account a defendant's state of mind. *Id.* at 2472-73. "[O]bjective reasonableness turns on the facts and circumstances of each particular case. *Id.* at 2473 (citing *Graham v.* Connor, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*; *see also Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). The "reasonableness" inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted). The proper application of this standard requires considerations of the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. This is not an exhaustive list, but rather an illustration of the "objective circumstances potentially relevant to a determination of excessive force. " *Id.*

For purposes of screening, the Court holds that the Complaint plausibly alleges that Officer Hopson used excessive force. Allen alleges that Officer Hopson sprayed him with a

10

chemical spray without provocation. Allen denies that he refused any order or gave Officer Hopson any other cause to use the spray. This suffices to state a claim for the use of excessive force. Therefore, the Court will order that Officer Hopson be served with process.

## V. Harassment Claims and Jail Conditions

Allen claims that he suffered cruel and unusual punishment in the form of sexual threats and harassment and through other conditions of his detention. Generally, claims regarding a prisoner's health and safety arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious." *Id*. To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*, or that he has been deprived of the "minimal civilized measure of life's necessities. . . ." *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted). "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks and citation omitted). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* at 9.

Allen contends that he was denied recreation and a sanitary living environment for approximately one month during his confinement in administrative segregation where Sgt. Brian was the supervising officer. Allen's conclusory allegations are insufficient to find that Sgt. Brian knew of the conditions as they specifically relate to Allen's treatment. To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the

11

official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Id.* Specifically, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Id.* Allen has alleged no facts to show that Sgt. Brian created or approved of the conditions and did so with deliberate indifference. The Complaint does not plausibly allege a violation of the Eighth Amendment. Therefore, Allen's claims about the conditions during his administrative segregation must be dismissed.

Likewise, Officer Bufford's sexual advances and gestures do not satisfy the objective component of an Eighth Amendment claim. Although unprofessional conduct by prison officials is never a cause for commendation, the Sixth Circuit and courts within the Sixth Circuit have consistently held that a prisoner has no constitutional claim for a prison official's verbal abuse or harassment. *See, e.g., Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (no Eighth Amendment claim for prison guard's "use of racial slurs and other derogatory language"); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (a guard's verbal threat to sexually assault an inmate "was not punishment that violated [the prisoner's] constitutional rights"); *Miles v. Tchrozynski*, No. 2:09-CV-11192, 2009 WL 960510, at *1 (E.D. Mich. Apr. 7, 2009) ("Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights. Verbal threats and abuse made in retaliation for filing grievances are likewise not actionable." (citation omitted)). Thus, Allen's claims against Officer Bufford are **DISMISSED**.

## VI. Access to the Courts

Finally, Allen has asserted that his mail is not being delivered in a timely fashion; however, the complaint does not assert a valid claim for the denial of Allen's First Amendment

right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The Supreme Court has described the right of access to the court as follows:

> The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (explaining that an inmate's First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

The Court holds that Allen lacks standing to pursue a First Amendment claim. In order to have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted). Allen's Complaint and its supplemental allegations do not show that Allen suffered any actual injury due to a delay in sending his outgoing legal mail. Without more, Allen has failed to show that the alleged failure to collect mail impaired his right of access to the courts. Therefore, Allen's claims for denial of access to the court are **DISMISSED**.

**CONCLUSION**

The Court concludes that Allen has alleged a plausible excessive force claim against Officer Hopson in his individual capacity. The Court **DISMISSES** the remainder of Allen's Complaint for failure to state a claim on which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

It is **ORDERED** that the Clerk shall issue process for Defendant Hopson and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Hopson pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally, if mail service is not effective. All costs of service shall by advanced by the United States.

It is further **ORDERED** that Allen shall serve a copy of every subsequent document he files in this case on the attorney for Hopson or on any unrepresented Defendant. Allen shall include a certificate of service on every document filed. Allen must also familiarize himself with Federal Rules of Civil Procedure and the Local Rules of Court.[5] Allen should promptly notify the Clerk, in writing, of any change of address, transfer to another facility, release from custody, or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of the case without further notice.

**IT IS SO ORDERED.**

                                             **s/ S. Thomas Anderson**
                                             S. THOMAS ANDERSON
                                             CHIEF UNITED STATES DISTRICT JUDGE

                                             Date: November 2, 2018.

---

[5] A copy of the Local Rules may be obtained from the Clerk of Court. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.